**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

**May 27, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

DELMART E.J.M. VREELAND, II,

    Plaintiff - Appellant,

v.

ADRIENNE JACOBSON, Litigation Coordinator, Colorado Department of Corrections; JAY KIRBY, former Inspector General Colorado, Department of Corrections; WILLIAM V. ALLEN, Assistant Colorado Attorney General; MARY CARLSON, Time Computation Manager Colorado Department of Corrections; CURRENT INSPECTOR GENERAL OF THE COLORADO DEPART OF CORRECTIONS; DIRECTOR OF OFFENDER SERVICES COLORADO DEPARTMENT OF CORRECTIONS; GILLESPIE, Officer, Colorado Department of Corrections FCF Property; JENNIFER S. HUSS, Assistant Colorado Attorney General; ROBERT C. HUSS, Former Assistant Colorado Attorney General; L. MAYNES-CORTEZ, Case Manager Colorado Department of Corrections FCF; JAMES MOORE, (6360), Colorado Department of Corrections, FCF; JARED POLIS, Governor of the State of Colorado; LAUREN RIVAS, Therapist Colorado Department of Corrections; PHILIP J. WEISER, Attorney General of the State of Colorado; DEAN WILLIAMS, Executive Director Colorado Department of Corrections; COLE WOODWARD, Assistant Colorado Attorney General,

No. 25-1098
(D.C. No. 1:20-CV-02420-PAB-KAS)
(D. Colo.)

Defendants - Appellees.

———————————————————

**ORDER AND JUDGMENT**[*]

———————————————————

Before **McHUGH**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.

———————————————————

Delmart E.J.M. Vreeland II appeals the dismissal of his claims against several Colorado officials. We affirm.

I

Vreeland is serving a sentence in the Colorado Department of Corrections. His complaint named sixteen defendants and raised several claims under 42 U.S.C. § 1983 and Colorado law. The claims generally involved allegations that Colorado officials had retaliated against him in various ways because of grievances and lawsuits he had filed in the past. One form of retaliation alleged in the complaint was frequent transfer between prison facilities. Vreeland claimed that officials had transferred him to seven different facilities in just seventy-two days.

The defendants moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6). The district court dismissed all claims except for one claim

———————————————————

[*]Oral argument would not help us decide this appeal, so we have decided it based on the record and the parties' filings. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). This decision is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

against each of two defendants. And it dismissed all defendants from the case except the two involved in the remaining claims.

With only the two defendants remaining, the parties presented an agreement to the court. The parties agreed that the case should be administratively closed for twelve months. Vreeland could move to reopen the case if he was "transferred out of" the Colorado Territorial Correctional Facility—his assigned facility at the time. Suppl. R. at 164. If Vreeland did not move to reopen during the twelve-month administrative-closure term, then the court would "dismiss the case with prejudice." *Id.*

Before the administrative-closure term expired, Vreeland filed several motions seeking to reopen the case and other relief. The court denied the motions, concluding that Vreeland could move to reopen the case only if he had been transferred from the Territorial facility, an event he never claimed had occurred. And because the administrative-closure term had expired, the district court dismissed Vreeland's claims with prejudice and closed the case.

Vreeland appeals, challenging both the order declining to reopen the case and the earlier Rule 12(b)(6) order dismissing most of his claims.[1]

II

We start with the order denying Vreeland's motions seeking to reopen the case and other relief (including a request for a temporary restraining order and a request to

---

[1] Vreeland represents himself, so we construe his filings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

allow a supplemental complaint).[2] We would typically review a decision declining to reopen an administratively closed case for an abuse of discretion. *See United States v. Texas*, 457 F.3d 472, 476 (5th Cir. 2006). But the dispute before us turns on the proper interpretation of the parties' agreement, an issue we review de novo. *See Scrivner v. Sonat Expl. Co.*, 242 F.3d 1288, 1291 (10th Cir. 2001).

The parties take competing views about the terms of their agreement. Vreeland says the agreement allowed him to seek reopening if state officials modified his housing circumstances in any way, even if he remained at the Territorial facility. And so when officials moved him within the Territorial facility from his single-occupancy cell, Vreeland says, he obtained the right to reopen the case. The state officials insist that Vreeland could seek to reopen the case only if officials transferred him out of the Territorial facility.

We agree with the state officials. The agreement unambiguously identified a single condition that would allow Vreeland to reopen the case—his transfer "out of" the Territorial facility. Suppl. R. at 164. And so changes to his housing arrangement within the facility afforded him no right to reopen the case.

Arguing otherwise, Vreeland emphasizes that when the parties presented their agreement to the court at a hearing, the state officials' lawyer claimed that the

---

[2] Vreeland never objected to a magistrate judge's recommendation to deny his motion to reopen the case. A party's failure to object to a magistrate judge's recommendation usually prevents appellate review if a district court accepts it. *See Wirsching v. Colorado*, 360 F.3d 1191, 1197 (10th Cir. 2004). But we may decline to apply this waiver rule in the interests of justice. *See id.* And we decline to apply it against Vreeland here based on the explanation for his failure to object.

Department of Corrections had no plans to move him "from his present housing situation, which is at the Colorado Territorial Correction Facility." *Id.* at 163. Vreeland maintains that "his present housing situation" referred to his single-occupancy cell. So when officials moved him from that cell, the argument goes, they violated the agreement.

We reject this argument for two reasons. First, the best reading of the lawyer's statement is that "his present housing situation" referred only to Vreeland's placement at the Territorial facility, not to a specific housing assignment within that facility. Second, the parties were clear about the one event that would allow Vreeland to reopen the case—his transfer out of the Territorial facility.

We see no support for Vreeland's claim that the parties made an "off record" agreement that he could reopen the case if officials moved him from his single-occupancy cell. Aplt. Opening Br. at 14. The claim seems to arise from a discussion between the parties and the court about how many of the agreement's details should appear in a minute order. But no one ever suggested in that discussion that the agreement contained other terms that had not been disclosed at the hearing.

In short, because Vreeland never claimed that he had been transferred from the Territorial facility during the administrative-closure term, the district court correctly denied his motions seeking to reopen the case and other relief.

## III

Turning to the Rule 12(b)(6) order, we first reject the state officials' assertion that we need not consider Vreeland's challenges against that order. Vreeland "is not

5

entitled to relitigate" the Rule 12(b)(6) decision, the officials tell us, because he "agreed to resolve his claims and administratively close his lawsuit subject to specific terms." Aplee. Br. at 32. But when he entered that agreement, only two claims remained; the others had already been dismissed in the Rule 12(b)(6) order. The parties' agreement said nothing about Vreeland's ability to appeal the Rule 12(b)(6) decision once the district court entered final judgment. And the state officials offer no persuasive reason why Vreeland should not be able to appeal the decision.

We review the Rule 12(b)(6) decision de novo. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).

A

Among the defendants named in Vreeland's complaint were four Colorado assistant attorneys general. The district court concluded that three of them were entitled to absolute immunity for some claims against them.[3] Vreeland challenges that conclusion.

Attorneys defending the government enjoy absolute immunity against § 1983 claims for actions they take as advocates. *See Benavidez v. Howard*, 931 F.3d 1225, 1231 (10th Cir. 2019). But immunity will not necessarily cover every action a

---

[3] The district court also granted absolute immunity to Colorado Attorney General Philip Weiser. Vreeland never challenges that ruling in his opening brief, limiting his argument to the immunity granted to "assistant" attorneys general. *E.g.*, Aplt. Opening Br. at 17. He has therefore waived any argument against the grant of immunity to Weiser. *See City of Colo. Springs v. Solis*, 589 F.3d 1121, 1135 n.5 (10th Cir. 2009).

government attorney takes. Immunity will not cover, for example, a "government attorney's administrative duties and those investigatory functions that do not closely relate to an advocate's preparation for judicial proceedings." *Id.* Absolute immunity instead covers only "those acts undertaken by a government attorney in preparation for judicial proceedings *and* which occur in the course of his or her role as an advocate for the government." *Id.* Our first task, then, is to identify the conduct underlying the district court's grant of absolute immunity.

Vreeland alleged that assistant attorney general Cole Woodward retaliated against him for protected conduct when he filed "a pleading containing known intentional lies" in one of Vreeland's prior lawsuits, *Vreeland v. Vigil*, No. 18-CV-3165 (D. Colo.). R. at 53. He also alleged Woodward denied him access to the courts when he "lied to the court" in *Vigil* about Vreeland's property and about why Vreeland had been transferred to a maximum-security facility. R. at 61.

Vreeland alleged that assistant attorney general William Allen denied him access to the court when he "lied" to the court in another one of Vreeland's prior lawsuits, *Vreeland v. Huss*, No. 18-CV-303 (D. Colo.). R. at 61. According to the complaint, Allen filed a pleading in that case containing false information and attached an affidavit by a prison official containing lies.

Vreeland alleged that assistant attorney general Robert Huss also denied him access to the courts when he "lied" to the court in *Huss*. *Id.*

7

Vreeland argues that the district court erred when it granted immunity based on these actions.[4] He claims the attorneys acted not as lawyers but essentially as witnesses. To support this claim, he tells us that the attorneys were not counsel of record in his prior lawsuits and that they merely "supplied sworn affidavits under penalty of perjury." Aplt. Opening Br. at 15.

We struggle to find record support for Vreeland's arguments. His complaint never identifies the counsel of record in his prior lawsuits. Nor does it allege that Woodward, Allen, or Huss authored any particular affidavit.

The dockets and documents referenced in Vreeland's complaint add clarity.[5] The docket in *Vigil* shows that Woodward was indeed counsel of record in that case. The docket in *Huss* likewise identifies Allen as counsel of record. The specific pleading from *Huss* referenced in the complaint is a response signed by Allen. Response, *Vreeland v. Huss*, No. 18-CV-303 (D. Colo. Dec. 4, 2019), Dkt. No. 94. One exhibit to the response is a sworn declaration from a prison official (who did not

---

[4] To the extent Vreeland argues the district court erred by granting absolute immunity because the assistant attorneys general insufficiently raised the defense, we reject that argument. In their motion to dismiss, the attorneys identified the actions they were alleged to have taken and argued that immunity covered them.

[5] We have considered the district court's dockets in *Vreeland v. Vigil* and *Vreeland v. Huss* as well as the specific pleading and declaration filed in *Huss*. To resolve a Rule 12(b)(6) motion, courts may consider documents referenced in the complaint that are central to a claim if the parties do not dispute their authenticity. *See Brown v. Montoya*, 662 F.3d 1152, 1166 (10th Cir. 2011). We may also take judicial notice of publicly filed court records, *see United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007), and consider them when reviewing a Rule 12(b)(6) decision, *see Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

receive absolute immunity). *See id.* Huss, by contrast, was not counsel of record in *Huss*; he was a defendant.

The complaint and the documents referenced in it make clear that the district court correctly granted absolute immunity to Woodward and Allen for their advocacy in Vreeland's prior cases.[6]

We reach a different conclusion for the claim against Huss. Unlike Woodward and Allen, Huss was not counsel of record in the prior lawsuit underlying the claim against him. And in the claim for which the court granted him absolute immunity—asserting a denial of access to the courts—the complaint alleged only that a group of four defendants including him "lied" to the court. R. at 61. Lacking specific allegations about what Huss personally did, we cannot say either way whether his actions were covered by absolute immunity. We therefore conclude that the district court erred when it granted him absolute immunity on the access-to-courts claim.

But we may affirm the dismissal of the claim on any ground the record supports. *See Bixler v. Foster*, 596 F.3d 751, 760 (10th Cir. 2010). In the motion to dismiss, Huss asserted qualified immunity. To overcome that assertion, Vreeland needed to "identify specific actions" taken by Huss. *Walker v. Mohiuddin*, 947 F.3d

---

[6] Vreeland posits that by making statements under penalty of perjury, a person necessarily waives immunity. But he neither raised this issue in his response to the defendants' motion to dismiss nor attempts on appeal to show that the issue could prevail under plain-error review. And so he has waived the issue. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019).

1244, 1250 (10th Cir. 2020) (internal quotation marks omitted).  He failed to do so by alleging a lie perpetrated by a "collective and undifferentiated" group of defendants.  *Id.* (internal quotation marks omitted).  Because Huss was entitled to qualified immunity on the access-to-courts claim, we affirm the district court's decision to dismiss the claim.

B

The complaint named Colorado Governor Jared Polis as a defendant, claiming that he along with several other defendants violated Vreeland's Eighth Amendment rights by allowing him to be housed with gang members who had sworn to kill him.  To establish an Eighth Amendment claim for failure to protect, a plaintiff must show that he is incarcerated under conditions presenting a substantial risk of serious harm, and that the defendant official was deliberately indifferent to his safety.  *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).  The complaint alleged that Polis and six other defendants had been informed "by letter, email, telephone," and in-person communication that Vreeland had worked as an informant, R. at 49, yet they "caused" or "allowed" him to be housed with the gang members, R. at 58.

The district court dismissed the claim against Polis, concluding that the complaint included only "vague, conclusory, and collective allegations against him." Suppl. R. at 61.

The district court's ruling was correct.  Like the district court, we must view the complaint's allegations in the light most favorable to Vreeland and draw all reasonable inferences in his favor.  *See Brooks v. Mentor Worldwide LLC*, 985 F.3d

10

1272, 1281 (10th Cir. 2021). But Vreeland's allegations about what Polis knew and did are conclusory because they omit the "underlying facts" and lack "any factual enhancement." *Id.* The complaint failed to identify, for example, who specifically told Polis anything about Vreeland's situation, what exactly the person said to him, or how Polis caused or allowed him to be housed in the same unit as hostile gang members. We disregard conclusory allegations like those against Polis. *See id.*

To the extent Vreeland believes Polis may nevertheless be liable because he has "final authority" over state executive agencies, he is mistaken. Aplt. Opening Br. at 22. A defendant cannot be liable under § 1983 "merely for being a supervisor or having knowledge of a subordinate's constitutional violation." *Stepp v. Lockhart*, 168 F.4th 1286, 1300 (10th Cir. 2026).

### C

Vreeland accuses the district court of acting as an advocate for the defendants. We see no support for that accusation in the court's order. The Rule 12(b)(6) proceedings involved many issues. The court carefully addressed each one, sometimes agreeing with the defendants, sometimes not.

### D

Vreeland has waived challenges to various parts of the district court's Rule 12(b)(6) order.

He raises, but never develops, two issues. First, he makes conclusory statements that the court erred when it granted qualified immunity on some claims, but he never engages with the court's analysis on any particular claim. Second, he

11

faults the district court for ruling that he failed to allege sufficient facts to support various claims. Yet aside from his arguments about the claim against Polis that we addressed above, he never presents an argument specifically targeting any claim dismissed for insufficient factual support. He instead makes only general, conclusory assertions that his complaint contained sufficient allegations.[7] His cursory assertions fail to adequately present these two issues for review. *See Tachias v. Sanders*, 130 F.4th 836, 843–44 (10th Cir. 2025). And by failing to adequately brief the issues, he has waived them. *See id.*

Vreeland raises two arguments for the first time in his reply brief. First, he contests the district court's rulings that some of his claims were barred by collateral estoppel. Second, he suggests that he raised a state-law claim against Polis that should have survived the motion to dismiss. By waiting until his reply brief to present these arguments, he has waived them. *See Eaton v. Pacheco*, 931 F.3d 1009, 1025 n.15 (10th Cir. 2019).

IV

After the state officials moved to dismiss, Vreeland never filed a motion to amend his complaint. He did, however, respond opposing the motion to dismiss. At the end of his 58-page response, he asked the court to "point out" any "insufficient"

---

[7] *See* Aplt. Opening Br. at 16 (arguing that "a casual read" of his complaint reveals that it "contained specificity and sufficiently stated various claims upon which relief could be granted"); *id.* at 23 (asserting that for "all claims made against all" defendants except Polis, Vreeland "believes" the complaint "contained enough personal participation assertion and specificity").

parts of his complaint and then allow him "the ability to amend." R. at 225. The court denied this request, citing local rules requiring parties to file a motion as a separate document rather than including it in a response and requiring parties moving to file an amended pleading to submit a copy of the proposed amended pleading. *See* D.C.COLO.LCivR 7.1(d) (separate document); D.C.COLO.LCivR 15.1 (proposed amended pleading). But recognizing the possibility that Vreeland might cure deficiencies in his complaint, the court dismissed several claims without prejudice.

Vreeland argues the district court should have allowed him to amend his complaint. We review the denial of permission to amend for an abuse of discretion. *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024). The court did not abuse its discretion because a party's failure to comply "with procedures required by local rule is a proper basis for denial of a motion to amend." *Shrader v. Biddinger*, 633 F.3d 1235, 1249 (10th Cir. 2011).

\* \* \*

The district court's judgment is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge