**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 22, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

CRYSTAL CASTILLO; LISA
GARELL; ANGELA GAYTAN;
DANA REEDER; NANCY
ROBINSON,

          Plaintiffs - Appellees,

v.

CHARLOTTE DAY, in her individual
capacity,

          Defendant - Appellant,

and

ANTHONY BOBELU, also known as
Tony Bobelu; RUSSELL
HUMPHRIES; BUD DOLAN; RUBY
JONES-COOPER; JOHN LARSEN;
JAMES SMITH; MARY PAVLISKA,
in their individual capacities,

          Defendants.
_____

CRYSTAL CASTILLO; LISA
GARELL; ANGELA GAYTAN;
DANA REEDER; NANCY
ROBINSON,

          Plaintiffs - Appellees,

v.

No. 14-6050

No. 14-6051

MARY PAVLISKA, in her individual capacity,

        Defendant - Appellant,

and

CHARLOTTE DAY; ANTHONY BOBELU, also known as Tony Bobelu; RUSSELL HUMPHRIES; BUD DOLAN; RUBY JONES-COOPER; JOHN LARSEN; JAMES SMITH, in their individual capacities,

        Defendants.

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:12-CV-00448-HE)**

---

Kevin L. McClure, Assistant Attorney General, Office of the Attorney General for the State of Oklahoma, Oklahoma City, Oklahoma, for Defendant-Appellant Charlotte Day.

David W. Lee (Emily B. Fagan with him on the briefs), Lee Law Center, P.C., Oklahoma City, Oklahoma, for Defendant-Appellant Mary Pavliska.

Derek S. Franseen (Micky Walsh with him on the briefs), Beeler, Walsh & Walsh, P.L.L.C., Oklahoma City, Oklahoma, for Plaintiffs-Appellees.

---

Before **GORSUCH**, **MURPHY**, and **MORITZ**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    Introduction

Plaintiffs are five women who were formerly incarcerated at the Hillside Community Corrections Center ("Hillside") in Oklahoma City, Oklahoma.  They filed a 42 U.S.C. § 1983 action against multiple defendants, alleging they were sexually abused and harassed in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  Plaintiffs' complaint named fifteen defendants, including Defendant-Appellant Charlotte Day and Defendant-Appellant Mary Pavliska, both of whom were guards at Hillside during the relevant period.  Plaintiffs alleged Day and Pavliska were aware of the abuse and did nothing to prevent it.

The claims against several defendants were dismissed without prejudice. The remaining defendants, except the alleged perpetrator Anthony Bobelu, moved for summary judgment.  The district court granted summary judgment to all movants except Day and Pavliska.  The district ruled a jury could conclude from the evidence presented that Day and Pavliska were deliberately indifferent to a known substantial risk of serious harm to the Plaintiffs.  In this interlocutory appeal, Day and Pavliska argue the district court erred by ruling they were not entitled to qualified immunity.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **dismiss** Day's appeal for lack of jurisdiction and **affirm** the denial of qualified immunity as to Pavliska.

## II.    Background

The district court's order contains a comprehensive discussion of the background facts involving all defendants.  We focus only on the background facts relevant to the appellate arguments raised by Day and Pavliska.  Although the facts are largely undisputed, the district court properly adopted the Plaintiffs' account if the parties' versions differed.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Day and Pavliska were employed by the Oklahoma Department of Corrections and worked at Hillside.  The Plaintiffs were all incarcerated at Hillside from February 2008 until August 2009.  As part of an off-site prison work program, Plaintiffs performed landscaping work and grounds maintenance at the Oklahoma Governor's Mansion (the "Mansion").  While Plaintiffs were at the Mansion their off-site supervisor was Anthony Bobelu, the Mansion's groundskeeper.  No guard from Hillside remained with Plaintiffs during their off-site assignment.

Plaintiffs allege that Bobelu and Russell Humphries, a cook at the Mansion, harassed and sexually assaulted them.  Plaintiff Reeder alleges Bobelu began sexually harassing her in October 2007.  She testified that Bobelu sexually assaulted her on multiple occasions, and Bobelu and Humphries raped her on April 22, 2008.  Reeder alleges on January 13, 2009, the day she was released from DOC custody, Bobelu forced her to engage in oral sex by threatening to

-4-

have her release date delayed. Plaintiff Garell testified that Bobelu raped her in December 2008, February 2009, and April 2009. Plaintiff Robinson worked at the Mansion until December 2008. She testified Bobelu made sexual advances and directed inappropriate sexual remarks toward her. Plaintiff Gaytan testified that Bobelu made sexual advances and touched her inappropriately. The dates of the incidents involving Gaytan are not clear from the evidence presented. Plaintiff Castillo testified she worked at the Mansion in April and May 2009. During that time, Bobelu made inappropriate comments, propositioned her, and fondled her.

The specific allegations against Day and Pavliska relate to their knowledge of the sexual misconduct and assaults alleged by Plaintiffs. Plaintiff Reeder testified she told Pavliska on January 12, 2009, that she had been sexually abused by Bobelu and Humphries. Reeder admitted she did not provide any details of the assaults but stated she used the phrase "sexual abuse." According to Reeder, Pavliska told her to return to her dorm and she never heard anything else about the report she made to Pavliska. To the best of Reeder's knowledge, Pavliska did not refer her complaint to anyone. Pavliska testified she reported the conversation to Day, but Day denies being told.

Plaintiff Garell testified she told Pavliska in February 2009 there were "things going on at the governor's mansion that shouldn't be going on" and "he was doing things that he shouldn't be doing." Pavliska told Garell "to be quiet"

-5-

or she would only cause problems for herself. Although Garell did not refer to Bobelu by name when she spoke to Pavliska, she testified she believed Pavliska knew both that Bobelu was involved and that the conduct involved sexual assault because Pavliska told her other inmates had made similar reports to her.

Garell also testified she had a discussion with Day about Bobelu and a former inmate named Callie Johnson who was released from incarceration in July 2008. Plaintiffs have asserted Johnson had a sexual relationship with Bobelu that began during her incarceration and continued after her release. According to Garell, when Day picked the inmates up from the Mansion shortly after Johnson's release, Day asked her, "So, are you the new Callie Johnson? Are you going to have sex with him, too?" Day also told the inmates seated in the van she knew "there [were] things going on at the governor's mansion and she wanted [the inmates] to tell her about it." Garell testified she was "kind of shocked" and did not respond to Day's comments.

Plaintiffs filed their original complaint on April 24, 2012, and their amended complaint on August 15, 2012. Claims were raised against Day and Pavliska only in their individual capacities. Both defendants moved for summary judgment, asserting they were entitled to qualified immunity. Day argued the facts, considered in the light most favorable to Plaintiffs, were insufficient to show she had any knowledge of the alleged misconduct of the perpetrators. Pavliska made a similar argument, and also asserted Plaintiffs' allegations of

harassment and abuse, even if true, did not amount to a constitutional violation. The district court denied both motions and these interlocutory appeals followed.

## III. Discussion

### A. *Appellate Jurisdiction*

The denial of summary judgment is ordinarily not appealable. *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011). The Supreme Court, however, has "recognized a limited exception to the categorization of summary-judgment denials as nonappealable orders" applicable when a defendant has asserted a qualified immunity defense. *Id.* "[I]mmediate appeal from the denial of summary judgment on a qualified immunity plea is available when the appeal presents a purely legal issue . . . . However, instant appeal is not available . . . when the district court determines that factual issues genuinely in dispute preclude summary adjudication." *Id.* (quotation omitted). Thus, while this court "lack[s] jurisdiction to review the district court's rulings on the sufficiency of the evidence, we nevertheless may determine whether a given set of facts violates a clearly established constitutional right." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (citation omitted). "Insofar as we have jurisdiction to review the denial of a qualified-immunity motion for summary judgment, our review is de novo." *Deutsch v. Jordan*, 618 F.3d 1093, 1099 (10th Cir. 2010).

## B.     Appeal No. 14-6050 - Charlotte Day

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Day moved for summary judgment, asserting she was entitled to qualified immunity because Plaintiffs' evidence was insufficient to show she knew of any excessive risk to Plaintiffs' health or safety.  Day argued the evidence failed to show she knew any of the Plaintiffs were being sexually harassed, sexually assaulted, or raped.  According to Day, she first learned of the Plaintiffs' allegations when she saw a television news story exposing Bobelu's romantic relationship with ex-inmate Callie Johnson.  At that time, Bobelu had already been removed from his job at the Mansion.  Day disputed she asked Plaintiff Garell, "So, are you the new Callie Johnson?  Are you going to have sex with him, too?"  However, she argued that even if Garell's testimony is true, the most that could reasonably be inferred from the comment was that she knew Bobelu and an ex-inmate began a consensual sexual relationship after the inmate was released from incarceration.  Thus, according to Day, the undisputed facts show she had no knowledge of any sexual misconduct at the time it was occurring.

The district court rejected Day's argument, disagreeing with Day that her comment to Garell about Callie Johnson could only be interpreted to mean Day

was asking about a post-incarceration consensual relationship.  The court also pointed to other evidence from which a jury could conclude Day knew about inappropriate conduct at the Mansion while Bobelu was employed there.  Specifically, the court referenced Reeder's testimony that she told defendant Pavliska she had been sexually abused at the Mansion and Pavliska's testimony that she reported this conversation to Day.  According to the district court, Pavliska's testimony alone "is enough to create a fact question for the jury as to whether Day was deliberately indifferent to a known substantial risk of serious harm to the Hillside inmates."

In her appellate briefing, Day challenges the district court's sufficiency determination, arguing she had "no knowledge of any facts of a substantial risk of harm to any of the Plaintiffs from which she could have known that she would be violating the Plaintiff's Eighth Amendment rights."  Although Day attempts to characterize the issue on appeal as Plaintiffs' failure to assert a violation of a constitutional right under clearly established law, her argument is limited to a discussion of her version of the facts and the inferences that can be drawn therefrom.  Thus, Day's argument is actually a challenge to the district court's conclusion Plaintiffs presented sufficient evidence to survive summary judgment.[1]

---

[1]Day's appellate brief contains a lengthy discussion of supervisor liability, arguing the *mens rea* standard applicable when a plaintiff asserts an Eighth Amendment claim based on supervisory liability is not clearly established.  Even Day acknowledges this argument is wholly irrelevant, prefacing her discussion

(continued...)

As such, this court lacks jurisdiction to review her appeal at the interlocutory

stage. *See Gray v. Baker*, 399 F.3d 1241, 1247-48 (10th Cir. 2005) (dismissing

an interlocutory appeal from the denial of summary judgment based on qualified

immunity because the "arguments involve[d] the district court's determinations of

evidence sufficiency"). Accordingly, Day's appeal is **dismissed** for lack of

appellate jurisdiction.[2]

## C. Appeal No. 14-6051 - Mary Pavliska

### 1. Qualified Immunity

Unlike Day, Pavliska presents an appellate argument over which we do

have jurisdiction. She asserts Plaintiffs cannot establish a violation of their

Eighth Amendment rights based on the facts they have alleged.

In her motion for summary judgment, Pavliska admitted that "an inmate has

a constitutional right to be secure in her bodily integrity and free from attack by

---

[1](...continued)
with the statement: "Assuming this Court ignores the fact that Plaintiffs did not
sue Day in her supervisory capacity . . . ." Day's appellate brief also contains an
irrelevant discussion of the continuing violation theory, claiming the district court
erred by applying the continuing violations doctrine to deny her qualified
immunity because application of that doctrine to Plaintiffs' claims is not clearly
established. This argument is puzzling in light of the district court's
unchallenged conclusion that "Day did not move for summary judgment on the
ground that plaintiffs' claims were barred by the statute of limitations."

[2]Plaintiffs have not argued this court lacks jurisdiction to hear Day's
appeal. This court, however, has an independent obligation to examine its own
jurisdiction at every stage of the litigation. *Devon Energy Prod. Co. v. Mosaic
Potash Carlsbad, Inc.*, 693 F.3d 1195, 1208 n.10 (10th Cir. 2012).

prison guards." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). She likewise admitted that the sexual assault of an inmate by a guard is a violation of the inmate's Eighth Amendment rights. *See Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (holding an inmate's allegations of rape satisfy the objective component of an Eighth Amendment excessive force claim because "[s]exual abuse is repugnant to contemporary standards of decency"). She argued, however, that she was entitled to qualified immunity because (1) Plaintiffs did not allege she affirmatively violated their constitutional rights, (2) she could not have failed to protect Plaintiffs from alleged constitutional violations because the conduct of Bobelu and Humphries does not rise to the level of a constitutional violation, and (3) she did not have actual knowledge of the bad acts of Bobelu and Humphries. The district court rejected each of these arguments.[3]

When a defendant moves for summary judgment on the basis of qualified immunity, the burden shifts to the plaintiff to demonstrate, on the facts alleged, that (1) the defendant violated her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged unlawful activity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the plaintiff cannot meet either part of

---

[3]The district court, however, granted summary judgment to Pavliska as to the claims raised by Plaintiff Robinson, concluding Robinson's claims were time-barred. Defendant Day did not move to dismiss Robinson's claims as time-barred.

this burden, the defendant is entitled to qualified immunity. *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1199 (10th Cir. 2009).

As to the first part of their burden, Plaintiffs assert Pavliska violated their Eighth Amendment right to be free from sexual harassment and physical assault while incarcerated at Hillside by failing to take reasonable measures to abate the risk they faced from Bobelu and Humphries. "[I]t is clearly established that a prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *id*. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). Plaintiffs allege Pavliska's own failure to reasonably respond to a substantial risk of serious harm to them violated their Eighth Amendment rights. Pavliska, however, argues she cannot be liable for the actions of Bobelu and Humphries because she did not actively participate in the sexual harassment and abuse alleged by Plaintiffs and she had no official authority over Bobelu or Humphries. As we understand her position, she argues a prison guard can never be liable under the Eighth Amendment when

-12-

unconstitutional acts are committed by another guard unless the perpetrator was her subordinate.[4]

More than three decades ago, this court held that the Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other inmates. *Ramos v. Lamm*, 639 F.2d 559, 572-74 (10th Cir. 1980). In *Hovater v. Robinson*, the county sheriff was accused of failing to protect female inmates from a prison guard who was sexually assaulting them. 1 F.3d at 1064. Although this court affirmed the grant of qualified immunity to the sheriff based on his lack of knowledge, we stated "a prison official's failure to protect an inmate from a known harm may constitute a constitutional violation." *Id.* at 1068 (relying on *Santiago v. Lane*, 894 F.2d 218, 225 (7th Cir. 1990), in which the Seventh Circuit held that "where it can be inferred that an institutional employee should have realized that there was a strong likelihood of an attack that employee can be held liable for violating the Eighth Amendment" (quotation omitted)).

---

[4] Relying on authority from other circuit courts of appeals, Pavliska also argues she cannot be held liable under a theory of bystander liability because Plaintiffs do not claim she was present when any of the alleged sexual assaults occurred. *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (holding bystander liability "will not attach where a [state actor] is not present at the scene of the constitutional violation"). To the extent Pavliska's arguments could be construed as addressing either supervisory or bystander theories of liability, they are misplaced because Plaintiffs' claims are not premised on either theory. *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (holding a defendant-supervisor is not responsible for constitutional violations under a theory of supervisory liability unless the plaintiff can demonstrate, *inter alia*, "the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy").

More recently, we reversed the grant of qualified immunity to prison officials in a § 1983 civil rights suit alleging employees of the Colorado Department of Corrections knew an inmate had been physically assaulted by members of a prison gang but failed to protect him from future harm. *Howard v. Waide*, 534 F.3d 1227, 1234 (10th Cir. 2008) (involving claims "prison officials acted with deliberate indifference to a known substantial risk of serious harm"). This court's precedent confirms Plaintiffs' position that a prison guard's failure to take reasonable steps to protect an inmate from a known risk of sexual abuse by another prison guard[5] can be a violation of the Eighth Amendment.[6] Accordingly, we reject Pavliska's argument that a prison guard who knows of, yet fails to reasonably respond to, a risk of harm created by another guard can only be liable if the perpetrator is a subordinate.

---

[5]"[P]ersons to whom the state delegates its penological functions, which include the custody and supervision of prisoners, can be held liable for violations of the Eighth Amendment." *Smith v. Cochran*, 339 F.3d 1205, 1215-16 (10th Cir. 2003).

[6]Pavliska briefly argues for the first time in her appellate brief that it was not clearly established that a prison guard can violate an inmate's Eighth Amendment rights by failing to report sexual abuse perpetrated by another guard over which she has no official authority. *See Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) ("To determine whether the right was clearly established, we ask whether the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (quotation omitted)). Because this argument was not presented to the district court, it is not developed and we will not address it. *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1142 n.8 (10th Cir. 2011).

Pavliska makes one additional challenge to the denial of qualified immunity. Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," a prison official must act with "deliberate indifference to inmate health or safety" to violate the inmate's constitutional rights. *Farmer*, 511 U.S. at 834 (quotation omitted). Deliberate indifference has both an objective and a subjective component. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). A plaintiff can meet her burden under the objective component by showing the harm she suffered was sufficiently serious. *Id*. In her motion for summary judgment, Pavliska argued the conduct of Bobelu and Humphries, while inappropriate and "despicable," was not sufficiently serious to constitute a constitutional violation.[7] Thus, she further argued, any failure on her part to protect Plaintiffs could not, itself, be a constitutional violation.

On appeal, Pavliska has abandoned her argument that Plaintiffs have failed to allege a cognizable deliberate indifference claim based on allegations they were sexually harassed and assaulted by Bobelu and Humphries, conceding "the objective component is not at issue." *Cf. Smith*, 339 F.3d at 1212 (holding an

---

[7]Pavliska made this argument as to the claims raised by Plaintiffs Castillo and Gaytan but the district court rejected it. Although this court has previously stated that not all sexual harassment by prison guards is "the sort of violence or threats of violence cognizable in the conditions of confinement cases the [Supreme Court] has addressed," *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995), we have also stated that allegations of verbal harassment of female prisoners by officers may be cognizable when such harassment is combined with sexual assaults, *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998).

inmate's allegations of rape satisfy the objective component of an Eighth Amendment excessive force claim because "[s]exual abuse is repugnant to contemporary standards of decency"); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998) (noting allegations of verbal harassment of female inmates by officers may be cognizable when such harassment is combined with sexual assaults on the inmates). She contends, however, that Plaintiffs' evidence is insufficient to show she acted with deliberate indifference to their health or safety, focusing on the subjective component of the deliberate indifference standard which "examines the state of mind of the defendant, asking whether [she] knew of and disregarded an excessive risk to inmate health or safety." *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) (quotation omitted).

"To prevail on the subjective component, the prisoner must show that the defendant[ ] knew [the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quotation omitted). Pavliska asserts Plaintiffs' evidence, at most, shows she acted negligently. *See Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1286 (10th Cir. 1999) ("[D]eliberate indifference is a stringent standard of fault. A showing of simple or even heightened negligence will not suffice." (quotations and citation omitted)). We lack jurisdiction to consider Pavliska's argument because it involves a determination of evidence sufficiency and not an abstract question of law. *Behrens v. Pelletier,* 516 U.S. 299, 313 (1996)

-16-

("[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case . . . ."). Pavliska, herself, concedes in her appellate brief that she is challenging the district court's conclusion "the reports of Garell and Reeder to Pavliska were sufficient to create a jury question as to whether Pavliska violated their rights." *See Bass v. Richards*, 308 F.3d 1081, 1086 (10th Cir. 2002) ("Those portions of the summary judgment denial . . . which involve a determination of evidence sufficiency . . . are not appealable." (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995)). She summarizes her argument as follows: "[T]he facts in this case did not prove the subjective component of the Eighth Amendment's deliberate indifference standard." The question of what Pavliska subjectively knew is a question of fact. *Farmer*, 511 U.S. at 842. Thus, we have no jurisdiction to consider this argument.

### 2. *Continuing Violations Doctrine*

Finally, Pavliska argues the district court erred by applying the continuing violations doctrine to Plaintiffs' claims. She asserts she cannot be liable for any alleged act that occurred prior to January 12, 2009, the day Reeder approached her and told her about sexual misconduct at the Mansion. Plaintiffs, however, concede this point in their opening brief, stating: "Mary Pavliska should be liable for the violations for failing to act once she became aware of Dana Reeder's allegations." Further, the district court's ruling against Pavliska's motion for

-17-

summary judgment was based on its conclusion Reeder's conversation with Pavliska put Pavliska on notice of a risk to Plaintiffs.  Accordingly, Pavliska's argument is irrelevant because the claims asserted against her are based only on incidents occurring after January 12, 2009.

### *3.     Conclusion*

To the extent Pavliska's appeal raises issues of law, we **affirm** the denial of summary judgment by the district court.  To the extent her appeal challenges the district court's ruling that a jury could conclude she acted with subjective deliberate indifference, we **dismiss** the appeal for lack of appellate jurisdiction.